MARGARET A. BOHAN ET AL., Appellants, *v.* JOHN CASEY ET AL., Respondents.

### January 8, 1878.

1. A certificate of a married woman's acknowledgment to a deed conveying her own property is sufficient, where the officer who makes it substantially complies with the requirements of the statute, whether the doctrine be

applied to the form of the certificate, or to his examination for the purpose of ascertaining her acquaintance with the contents of the instrument.

2. While it is better that the officer taking such an acknowledgment should read the entire deed to her, and explain it, using the words of the statute in the questions put to her, yet it will be a substantial compliance with the statute if he "makes known" to her the nature and effect of the instrument. It is immaterial whether she hears the contents of the instrument stated by the officer, or states them to him; but if she undertakes to state its contents, she must state enough to make it clear to the officer that she has a proper knowledge of its contents; her mere statement that she knows its contents is not sufficient.

3. Where the certificate of the officer taking such acknowledgment shows a compliance with the law, and it is sought to go behind it, the burden is upon those making the attempt to satisfy the court, by clear and convincing proof, that the officer certified to what was false.

4. In assessing damages upon an injunction-bond, defendant is entitled to a reasonable attorney's fee for services rendered on the motion to dissolve; and this without regard to whether, upon the motion, the case was heard upon its merits.

APPEAL from St. Louis Circuit Court.

*Affirmed.*

W. L. SCOTT, for appellants : Where the officer taking the acknowledgment fails to make the *feme covert* acquainted with the contents of the instrument, the acknowledgment is defective. — Wag. Stat. 275, sec. 13; 1 Pars. on Con. 400. As to requisites of assent. — *Chauvin* v. *Wagner*, 18 Mo. 544; *Harristone* v. *Randolph*, 12 Leigh, 445; *Hughes* v. *Lane*, 11 Ill. 121; *Chestnut* v. *Shane*, 16 Ohio, 614. The deed of a married woman, the acknowledgment of which is defective in substantive elements, is absolutely void; and the certificate is not conclusive of the facts therein stated. — *Wannell* v. *Kern*, 57 Mo. 478; 2 Hill on Real Prop. 472 *et seq.*, and notes; *Elliott* v. *Percie*, 1 Pet. 328; *Hepburn* v. *Dubois*, 12 Pet. 345; *Davidson* v. *Shirley*, 6 Blatchf. 531; *Dodge* v. *Hollingsworth*, 6 Minn. 25; *Gilbert* v. *Stanley*, 1 Hill, 121; *Good* v. *Zercher*, 12 Ohio, 336; *Marriner* v. *Saunders*, 10 Ill. 125.

PHILIP DONAHUE, for respondents : Where the officer before whom a *feme covert* acknowledges a conveyance of her

property makes known to her the contents of the instrument, this is a sufficient compliance with the statute. — *Mc-Daniels* v. *Priest*, 12 Mo. 546 ; *Chauvin* v. *Wagner*, 18 Mo. 544; *Delasus* v. *Porter*, 19 Mo. 432 ; *Peters* v. *Carter* 20 Mo. 467 ; *Siemers* v. *Kleeburg*, 56 Mo. 199. The certificate is *prima facie* evidence of the truth of its recitals, and where it is attempted to go behind it, the evidence of the falsity of the certificate must be clear and convincing. — *Sharp* v. *McPike*, 62 Mo. 300 ; *Kerr* v. *Russell*, 69 Ill. 666 ; *Sanger* v. *City of Chicago*, 65 Ill. 506. Counsel-fees for services rendered on a motion to dissolve may be recovered by defendant, on the injunction-bond. — *Hannibal, etc., R. Co.* v. *Shipley*, 1 Mo. App. 254 ; *Buford* v. *Packet Company*, 3 Mo. App. 159 ; *McRae* v. *Brown*, 12 La. An. 181 ; *Hale* v. *Meegan*, 34 Mo. 277.

HAYDEN, J., delivered the opinion of the court.

This is a petition in the nature of a bill in equity, against the beneficiary and trustee in a deed of trust which purports to convey the separate real property of a married woman, the suit being brought by that married woman to cancel the deed of trust, on the ground that though her acknowledgment appears by the certificate to have been duly taken, that acknowledgment was in fact never properly or legally made. The bill states that the appellant, after her marriage with John Bohan, who was a defendant below, became, by inheritance, the owner of a valuable piece of property in the city of St. Louis, which real estate is known as the Fourteenth and Market Street property, and yields large rents ; that her husband, a man of dissipated habits and embarrassed circumstances, became anxious to obtain a loan of $7,000, in the autumn of 1872, with which to meet his obligations ; that at this time he owned a piece of unimproved property known as the Benton Street property ; that he was negotiating with Casey, the respondent, who afterwards became the beneficiary in the deed of trust, for

the money, and had requested the appellant to give Casey a. mortgage on her Fourteenth and Market Street property, which she positively refused to do ; that she offered to relinquish her dower interest in the Benton Street property, and suggested to him that he should mortgage that; that he determined to do so, and told her that he could obtain the loan by mortgaging the unimproved property ; and, on the evening of October 3, 1872, told his wife that he would send a notary-public to their house for her signature and acknowledgment. The bill further states that the notary accordingly went to the house with a written instrument, which the wife supposed " to be the deed her husband had requested her to sign," and then proceeds as follows : " He [the notary] held it up to her, and said to her, ' You know what this is?' or words of like import; and this plaintiff replied that she did, supposing it was the mortgage-deed for the vacant property. The said notary did not read the deed to her, nor offer to do so ; he did not propose to her that he should read it, nor did it occur to her to examine it ; she never suspected it was any thing else than the mortgage she was expecting to sign, as aforesaid, upon the vacant property of her husband. She signed her name to it, and the notary took the paper and at once departed. From the events subsequently transpiring, hereafter to be stated, she has reason to believe that the notary, in the course of the few minutes' conversation with her, made use of the words ' Fourteenth Street,' or ' Fourteenth Street property.' She states that she did not observe this, and if she heard the words at all, — and she is confident she did not hear them, — she did not catch their meaning, and would readily have. confounded Fourteenth with Eighteenth. She was entirely ignorant of his having made use of this expression. She states that on the following morning one of her sisters, who was present in the room when she signed the deed, and who knew of her purpose not to encumber her own property, came to her and expressed her surprise that she had conveyed her own prop-

erty. Plaintiff heard her with astonishment, and went down to the notary's office to know if this was really the case, and discovered that the deed was a mortgage on her said property to secure this loan of $7,000.''

The bill states that she was led to believe she had no legal remedy, until shortly before the present suit was brought; that the mortgage had been recorded before she saw the notary; reiterates, in different ways, the statement that she was in total ignorance of the contents of the deed when she signed it; but admits that she supposed it to be, from what her husband had told her, a deed given to the respondent Casey to secure a loan for $7,000 made to her husband, for a period, according to her impression, of five years. The bill further states that the trustee, under the direction of Casey, has, under the power, proceeded to advertise the property for sale; and asks that the sale may be enjoined, the deed of trust cancelled as a cloud upon the title, etc.

A temporary injunction was granted, and an answer afterwards filed admitting the execution of the deed of trust, but denying, substantially, the allegations of the bill. Upon a motion to dissolve, the whole case was heard, and a decree rendered dismissing the bill.

The principles by which this case must be governed have been laid down by the Supreme Court of this State in construing the statute concerning the acknowledgments of married women to conveyances of their separate real property. Since the decisions in *McDaniel* v. *Priest*, 12 Mo. 545, and *Chauvin* v. *Wagner*, 18 Mo. 531, were rendered, the Legislature has seen fit to modify the statute, and to dispense with certain of the formalities then required. Among other alterations made, a notary-public or justice of the peace of the county in which the land lies may now take an acknowledgment, which then could have been taken only upon appearance of the wife before a court of record. Rev. Stat. 1825, p. 220, sec. 12; Gen. Stat. 1865, p. 444,.

sec. 9. By sec. 14 of the chapter of the last revision, upon the subject of conveyance of real estate, it is provided that, " when the acknowledgment is that of a married woman, the certificate shall further state that she was made acquainted with the contents of the instrument, and, on an examination separate and apart from her husband, acknowledged that she executed the same freely, and without compulsion or undue influence of her husband." The previous section provides that " no acknowledgment of a married woman shall be taken, unless she shall first be made acquainted with the contents of such instrument, and shall acknowledge, on an examination apart from her husband, that she executed the same freely, and without compulsion or undue influence of her husband." Wag. Stat. 275, secs. 13, 14. The language of the statute of 1825 upon this subject is, if any thing, more particular and stringent in its requirements than are the provisions which have just been quoted. The earlier statute requires, not only that the court, or one of the judges, shall make the wife acquainted with the contents of the deed, but that the contents shall be explained to her, etc. We may fairly argue, therefore, from the case of *Chauvin* v. *Wagner* to the present. The doctrine is there declared that the statutes enabling married women to convey their separate realty are to be pursued substantially, and that a substantial compliance with the law is sufficient. This is said more particularly in reference to the form of the certificate, but the form of the certificate implies, and corresponds to, the acts required to be done. The decision relates, also, directly to the substance of what is required to take place between the court or officer and the married woman. The statute of 1825 required that the certificate should set forth " that the contents were made known and explained " to the wife. It was objected that the certificate only stated that she was made acquainted with the contents of the deed, while the act required that the court should explain the contents of the deed. The court,

giving the statute a reasonable construction, held that while it is the duty of the officer to see that the woman understands the nature and effect of the instrument, the officer is not required to explain its contents to her when, from her own statements, made at the time, it plainly appears that she understands that nature and effect. The officer cannot impart information that already exists ; and thus the design of the law, as shown in that case, may be accomplished though no information is imparted. "The courts and officers intrusted with this duty," says Judge Gamble, delivering the opinion of the court, "must be supposed to understand the object of the statute in requiring them to see that the woman knows the effect of her act, and the certificate is only required to show that the duty enjoined upon the officer has been performed." It is, however, obviously, one thing for the woman to state facts convincing the officer that she knows the contents of the instrument, and another thing for her to state a mere conclusion that she is acquainted with its contents. In her conclusion she may be mistaken, or the husband may have informed her in regard to the nature and effect of the deed, and thus her mere statement that she already knows the contents of the deed may, in legal contemplation, amount to nothing. The case of *Chauvin* v. *Wagner* is not authority for the position that if the wife says she is acquainted with the contents of the deed the officer need go no further ; nor does the court there so hold. The object of the law is to afford her a distinct and official source of information, apart from her husband or what he may have told her. *Wannell* v. *Kem*, 57 Mo. 482. If, indeed, the information he has imparted is accurate, and the officer can see from the facts stated by her that she has correct knowledge, the circumstance that such knowledge came through the husband cannot, of course, destroy it, and the impossibility remains of communicating information to a person who is previously possessed of it.

The present case can be no stronger than it is made by

the facts as alleged in the bill and the testimony of the appellant, who, upon the material points, is the principal witness on her side of the case. Conclusions, either in the bill or in the testimony, are of little importance. The substantial ground of the action is not that the appellant did not, when she acknowledged the deed of trust, understand the nature and effect of the deed, apart from the particular property described in it, but that the wrong property was described. The complaint that the other terms of the deed were not explained to her, apart from the description of the property, is merely used as a makeweight, and, in view of the certificate and the testimony of the notary, as well as the inferences which are to be drawn from the statements of the appellant herself, must be regarded as without substantial basis.

In regard to the property described, it cannot be reasonably doubted, upon the testimony, that the notary, at the time he took the acknowledgment, said to the appellant, and in her hearing, words to the effect that the deed embraced the Fourteenth and Market Street property. Not only does he so state, but the sister of the appellant, who was present when the acknowledgment of the wife was taken, says, speaking of what the notary said to the appellant : " I think the word I heard was, ' Do you understand this is the Fourteenth Street property?' " This witness says her effort was not to pay attention, as she did not wish to overhear the conversation. Yet she heard the notary put the question just quoted, and thinks she heard her sister say " Yes," in reply. But, still further, the appellant herself says that the notary may have said " Fourteenth Street property." She says at times to the contrary, but appears unwilling to adhere to such contradiction ; and, escaping from this point, dwells on her failure to hear or understand the statements. Yet, on direct examination, she says that if the notary said the deed was for the Fourteenth Street property she never heard him say so, and adds : " If he said it, it has escaped

my memory," etc.    Again, she says the notary may have used the expression, but that it never attracted her attention.

The officer's certificate here complies with the law.    The attempt is to go behind the certificate, and to show that, in spite of its statements, the statute has not been complied with, and that the property did not pass.    Though fraud is spoken of, nothing in the nature of fraud is shown.    The notary did not know there was such property as the Benton Street property, and by direction of the husband, drew up the deed of trust describing the Fourteenth and Market Street property.    The testimony tends to show that the husband first signed and acknowledged the deed; but, independently of this, he certainly had it prepared, and directed the notary to draw the deed of trust on the Fourteenth and Market Street property.    He called the special attention of the notary to this fact by remarking that he was a little afraid his wife would not sign the instrument.    Certainly, from these facts the reasonable inference is that when the husband told his wife that the notary would call, he then told her, or had previously told her, that the deed of trust was to be on the Fourteenth and Market Street property. Upon the supposition that the wife was to be deceived and defrauded, with the connivance and assistance of the notary, the hypothesis that the wife was told that the encumbrance was to be upon the Benton Street property is reasonable.    But the notary acted in perfectly good faith, and with an evident desire to do his duty, as is shown, not only by his own testimony, but by that of the appellant's sister, who accidentally overheard part of the conversation, and who was called as a witness on the appellant's behalf.    The husband must have anticipated that the notary would do as he did do; would explain to the appellant that she was encumbering her Fourteenth and Market Street property; to which he had called the notary's special attention by pointing out the reluctance of the wife to mortgage it.    How, then, can it be consistently

supposed that he had previously told his wife that the notary would call to take her acknowledgment to a deed of trust by which she was to release her dower in the Benton Street property? The consistent theory of the appellants failed when they failed to prove fraud or imposition in the case.

It is complained that the notary did not ask the wife as to "undue influence," and that to have asked her as to "compulsion" is not enough. But the notary asked her whether she executed the deed of her own free will, or whether her husband compelled her to do it. To the former question she replied, "Yes;" to the latter, "No." The words "undue influence" do not appear to have been used; but it was not necessary to use the very words. It is, indeed, much better, as a matter of precaution, that the officer should read the entire instrument to the woman, and accompany the reading with explanations, and that the words of the statute should be used in asking the questions; but the law does not absolutely require this, and to hold that it does, now, would be to disturb many titles. When the officer makes his certificate in conformity to law, and that certificate is attacked by the married woman, as here, the question is whether that which took place upon the privy examination justified the officer in making the certificate. The burden upon the appellants is, not to put the matter in doubt, for witnesses in such cases can hardly be expected to give the exact expressions used long previously, but by clear and convincing evidence to satisfy the court that the officer was not justified in certifying as he did, and that he certified to what was false. Such is not the evidence in this case; on the contrary, to annul this acknowledgment would, in effect, be to set aside a deed of a married woman on the ground that, having once made it and acknowledged it in the manner required by law, she had repented of her act and wished to exercise a power of revocation. Even where the testimony of the married woman was clearer, more consistent, and more positive than it is here, a court of

equity should hesitate before setting aside a conveyance,. properly acknowledged on its face, on the testimony of the complainant alone. There should be at least the concur- rence of material circumstances. Where a law imposes a duty upon a sworn officer, something is to be presumed in favor of his acts ; and although the later cases do not carry this presumption to the extent to which it was formerly carried, for the safety of the community and the stability of property its force must still be recognized.

Upon the assessment of damages upon the injunction- bond, the court below instructed the jury that the defend- ants were entitled to a reasonable attorney's fee for all the services rendered on the motion to dissolve, and that such. allowance could not be reduced or increased by the fact. that upon the motion to dissolve the case was heard upon its merits. This was correct. *Buford* v. *Packet Co.*, 3 Mo. App. 159. There was no error in giving or refusing instruc- tions.

The judgment of the court below is affirmed. All the. judges concur.